**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CHARITY CHAMBERS and<br>ANTHONY CHAMBERS, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action |
| | ) | File No. _____ |
| v. | ) | |
| | ) | |
| DEKALB COUNTY, GEORGIA,<br>OFFICER DERON FULTON, in<br>his individual capacity, and<br>OFFICER JOHN BOWE, in his individual<br>capacity, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Charity Chambers and Anthony Chambers bring this action

against Defendants under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth

Amendments of the United States Constitution.

## INTRODUCTION

1.     This is a case about a series of gratuitous and illegal arrests made by

Defendants and the imprisonment and prosecutions undertaken

against Plaintiffs that followed.

2.      On a Saturday evening, Plaintiffs left Bigelow's Bar and Grill. They

were then accosted by Defendants, who threatened them with violence

and arrest for engaging in protected speech. Defendants disregarded

Plaintiffs' and other citizens' rights of liberty and free speech, arresting

them for reasons both fabricated and illegal on their face. Defendants

also arrested Plaintiffs' companions. All charges against all arrestees

were later dropped.

3.      Plaintiffs now seek justice and accountability for the harm that the

Defendants have caused and redress for the loss of liberty and the

hardship that Plaintiffs have endured and continue to suffer as a result

of the Defendants' misconduct.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331

because this case presents a federal question under 42 U.S.C. § 1983 and

the First, Fourth, and Fourteenth Amendments of the United States

Constitution.

5.      This Court has supplemental jurisdiction over Plaintiffs' state law

claims under 28 U.S.C. § 1367.

**6.**     Upon service of process, this Court acquires personal jurisdiction of the

Defendants under Fed.R.Civ.P. 4(k)(1)(a).

**7.**     Venue in this Court is proper under 28 U.S.C. § 1391 because the events

giving rise to Plaintiffs' claims arose in this district and division.

### PARTIES

**8.**     Charity Chambers is a United States citizen and resident of Georgia.

**9.**     Anthony Chambers is a United States citizen and resident of Georgia.

**10.**    Defendant DeKalb County Police Officer Deron Fulton ("Officer

Fulton") is sued in his individual capacity. At all times relevant to the

complaint, Officer Fulton acted under the color of law.

**11.**    Defendant DeKalb County Police Officer John Bowe ("Officer Bowe") is

sued in his individual capacity. At all times relevant to the complaint,

Officer Bowe acted under the color of law.

**12.**    Defendant DeKalb County is a Georgia political subdivision subject to

suit. DeKalb County employed Officers Fulton and Bowe at all times

relevant to this complaint.

### FACTUAL ALLEGATIONS

**13.**    On the night of July 11, 2015, Plaintiffs Charity Chambers and Anthony

Chambers went to Bigelow's Bar and Grill, located at 2564 Gresham
Road in DeKalb County, Georgia ("Bigelow's") with their friends,
Diane, Shayla, and Andre Johnson (the "Johnsons").

14.   Diane and Andre Johnson are married. Shayla Johnson is Mr. Johnson's
sister.

15.   At the same time, Officer Fulton was stationed outside of Bigelow's in
the parking lot used by Bigelow's customers.

16.   Officer Fulton had the approval of his DeKalb County supervisors to
work part time security at Bigelow's on the evening of June 11, 2015
and early morning of June 12, 2015. He was wearing a full uniform and
operated within his official capacity as a DeKalb County police officer.

17.   Shortly before leaving, Plaintiffs and the Johnsons got into a small
argument about paying the check. The argument was not loud, did not
attract attention of any staff or patrons, and did not prevent them from
paying their bill.

18.   Soon thereafter, Plaintiffs and the Johnsons left Bigelow's and walked
to their respective cars, which were parked in Bigelow's parking lot.

19.   As they walked to their cars, Plaintiffs walked in a different direction

than the Johnsons.

20.   As Plaintiffs walked to their car, Ms. Chambers made an unflattering
      remark about Shayla Johnson as she was speaking to Mr. Chambers.

21.   Shayla Johnson did not hear the remark, and it was not directed to her.
      Shayla Johnson was not near Plaintiffs. Ms. Chambers' comment was
      directed only to her husband and was part of a private conversation.

22.   After overhearing Plaintiffs' private conversation, Officer Fulton
      aggressively approached Plaintiffs, and informed Ms. Chambers that
      she was not allowed to curse in public.

23.   Officer Fulton then stated, "You need to stop that cussing before I tase
      you," and placed his hand on his taser in his police belt.

24.   After a brief conversation with Officer Fulton, Mr. Chambers stated
      something to the effect of, "There is no reason to tase my wife. You
      don't even know who we are. I could be a cop. I could be anyone."

25.   Mr. Chambers did not identify himself as a police officer, did not claim
      to be a police officer, and did not represent himself as being a law
      enforcement officer or any governmental official. The purpose of Mr.
      Chambers' comment was to call attention to Officer Fulton's

unnecessarily combative and condescending behavior.

26.     Officer Fulton did not tell Plaintiffs that they were being detained or were under arrest at any point prior to the Chambers arriving at their car.

27.     Plaintiffs did not wish to engage with Officer Fulton and kept walking to their car, which they got into, with Charity Chambers as driver and Anthony Chambers as passenger.

28.     Without any additional warning, or an order for the Chambers to stop, Officer Fulton then went to his marked police car, got in, and quickly drove and parked his vehicle immediately behind Plaintiffs' car before they could pull out of their parking space.

29.     The manner in which Officer Fulton parked his car prevented Plaintiffs from moving their car, and Plaintiffs were blocked into their parking spot on all sides.

30.     With Plaintiffs seated in their car, and his vehicle still blocking their exit, Officer Fulton approached and aggressively demanded to know why they walked away from him.

31.     Officer Fulton repeatedly used profanity and other threatening,

condescending, and unprofessional language during his interaction with Plaintiffs.

32. Plaintiffs asked why Officer Fulton approached them with such hostility, and if they were free to leave. Ms. Chambers requested that Officer Fulton summon a supervisor to the scene.

33. As the Johnsons left the parking lot, they noticed the police car parked behind Plaintiffs' car. Worried that there was a problem with their friends, the Johnsons stopped driving and parked their car in the parking lot.

34. While Officer Fulton continued to unnecessarily berate Plaintiffs, Diane Johnson exited the car, and slowly and calmly approached Officer Fulton. Ms. Johnson then returned to her car to get her cell phone because she wished to lawfully record the incident.

35. After Ms. Johnson returned, she attempted to begin filming from a distance that did not interfere with Officer Fulton's official duties.

36. Without warning or cause, Officer Fulton approached her and slapped her cell phone out of her hands, causing it to not record and to land under the Chambers' car.

**37.**     During the interaction between Plaintiffs and Officer Fulton, Officer
Bowe arrived on the scene while Plaintiffs were still inside their car.

**38.**     Ms. Johnson then retrieved her phone from under the car, and Officer
Fulton told her to go stand against the wall of the restaurant. Ms.
Johnson complied with that request.

**39.**     Neither Plaintiff committed any crime in the presence of Officer Bowe.

**40.**     Officer Fulton did not report to Officer Bowe that either Plaintiff had
committed a crime.

**41.**     Shortly after Officer Fulton ordered Ms. Johnson to stand against the
wall of the building, Officer Fulton and Officer Bowe ordered Mr.
Chambers to exit the car, handcuffed him, and placed him in the back
of Officer Fulton's patrol car.

**42.**     Officer Fulton and Officer Bowe arrested both Diane and Andre
Johnson.[1]

**43.**     Officer Fulton and Officer Bowe then returned to Ms. Chambers'
location, ordered her to exit the car, placed her in handcuffs, and placed
her in the back of Officer Fulton's patrol car.

---

[1]     Those arrests are the subject of another lawsuit.

**44.**   Officer Fulton then transported Plaintiffs to the DeKalb County Jail.

**45.**   Charity Chambers was charged with disorderly conduct under O.C.G.A. § 16-11-39.

**46.**   Anthony Chambers was charged with impersonating a police officer under O.C.G.A. § 16-10-23 and disorderly conduct under O.C.G.A. § 16-11-39.

**47.**   While Ms. Chambers was incarcerated at the Jail, Officer Fulton sought and obtained an arrest warrant for Ms. Chambers on July 12, 2015, at 7:44 p.m.

**48.**   While Mr. Chambers was incarcerated at the Jail, Officer Fulton sought and obtained an arrest warrant for Mr. Chambers prior to his release.

**49.**   Ms. Chambers was ultimately released from the Jail after she posted bond on Monday, July 13, 2015.

**50.**   Mr. Chambers was ultimately released from the Jail on Tuesday, July 14, 2015 after he posted bond.

**51.**   The DeKalb County Solicitor General ultimately declined to prosecute Ms. Chambers' case, and filed a notice in the state court stating that no accusation would be filed.

52. Mr. Chambers' charges were ultimately dismissed by the DeKalb County District Attorney's Office. That dismissal was not the result of any compromise or agreement between Mr. Chambers and the District Attorney.

53. As a result of their arrests and prosecution, Plaintiffs suffered a loss of liberty, reputational damage, humiliation, emotional distress, and lost wages.

## COUNT I

*Unlawful Seizure*
*under 42 U.S.C. § 1983 and the Fourth Amendment*
*by Charity and Anthony Chambers against Officer Fulton*

54. As detailed above, when Officer Fulton pulled his police car behind the Chambers' parked car, Officer Fulton removed any realistic possibility that the Chambers could leave the scene.

55. Every reasonable person in the Chambers' position would believe that they were not free to leave after Officer Fulton parked his patrol car behind their car.

56. Under the Fourth Amendment, Defendant Fulton's blocking of the Chambers' car constituted a seizure which must be supported by

reasonable suspicion.

57. Prior to, during, and after the seizure of Plaintiffs, Officer Fulton had no reasonable articulable suspicion that either of Plaintiffs committed, or would commit, any crime whatsoever.

58. Based upon the information known to Officer Fulton at the time of the seizure of Plaintiffs, no reasonable officer could have believed a reasonable articulable suspicion existed to justify Plaintiffs' detention.

59. The illegal seizure of both Plaintiffs was the proximate cause of Officer Fulton and Officer Bowe's decision to arrest and prosecute Plaintiffs because it foreseeably caused Plaintiffs to further object to the Officers' unlawful behavior.

60. In seizing Plaintiffs, Officer Fulton acted with conscious indifference, reckless disregard for the consequences of his actions, and malice such that an award of punitive damages is authorized.

## COUNT II

*False Arrest, Retaliatory Arrest, and Malicious Prosecution*
*under 42 U.S.C. § 1983 and the First and Fourth Amendments*
*by Charity Chambers against Officers Fulton and Bowe*

61. No reasonable officer in Officer Fulton's or Officer Bowe's position

could have believed there was probable that Ms. Chambers committed the offense of disorderly conduct or any other criminal act prior to her arrest.

62. Ms. Chambers' arrest was predicated on statements made by Ms. Chambers immediately before and during the seizure initiated by Officer Fulton.

63. The statements made by Ms. Chambers did not constitute fighting words.

64. The statements by Ms. Chambers constituted protected speech under the First Amendment.

65. But for Ms. Chambers' speech, she would not have been arrested.

66. Officers Fulton and Bowe arrested Ms. Chambers in retaliation for her constitutionally-protected speech.

67. Officer Fulton initiated a criminal prosecution against Ms. Chambers by seeking, and obtaining, a warrant for her arrest.

68. The arrest warrant issued while Ms. Chambers was still incarcerated in the Jail and before she posted bond.

69. The arrest warrant affidavit submitted by Officer Fulton contained

knowingly false statements, which were material to the prosecution. The arrest warrant affidavit portrayed her statement as heated exchange accompanied by imminent violence among a crowd of onlookers, instead of a private conversation with her husband about a person who was not even present.

70.  The arrest warrant affidavit falsely quoted the words Ms. Chambers spoke to her husband in an attempt to exaggerate Ms. Chambers' use of profanity and the threatening nature of the language.

71.  Even if the statements in the warrant affidavit were not false, no reasonable officer could have believed the statements amounted to fighting words, or could meet the elements of Georgia's disorderly conduct statute.

72.  No reasonable officer could have believed probable cause existed for Ms. Chambers' arrest or the later issuance of the arrest warrant.

73.  The dismissal of Ms. Chambers' charges constitutes a favorable termination on the merits of her criminal case.

## COUNT III

*False Arrest, Retaliatory Arrest, and Malicious Prosecution*
*under 42 U.S.C. § 1983 and the First and Fourth Amendments*
*by Anthony Chambers against Officers Fulton and Bowe*

**74.**   No reasonable officer in Officer Fulton's or Officer Bowe's position could have believed that there was probable cause to believe Mr. Chambers committed the offense of disorderly conduct, impersonating an officer, or any other criminal act prior to his arrest.

**75.**   Mr. Chambers' arrest was wholly predicated on statements made by Mr. Chambers during the seizure initiated by Officer Fulton.

**76.**   The statements made by Mr. Chambers did not constitute fighting words.

**77.**   The statements likewise did not constitute any representation that he was a current or former police officer.

**78.**   During his initial detention, Mr. Chambers criticized Officer Fulton's and Officer Bowe's performance of their official police duties.

**79.**   All of Mr. Chambers' speech leading up to his arrest was protected by the First Amendment.

**80.**   But for Mr. Chambers' protected speech, he would not have been

arrested.

81. Officers Fulton and Bowe arrested Mr. Chambers in retaliation for his constitutionally-protected speech.

82. Officer Fulton initiated a criminal prosecution against Mr. Chambers by seeking and obtaining a warrant for his arrest.

83. The arrest warrant issued while Mr. Chambers was still incarcerated in the Jail and before he posted bond.

84. The arrest warrant affidavit submitted by Officer Fulton contained knowingly false statements which were material to the prosecution. Officer Fulton falsely represented that Mr. Chambers represented himself as a police officer and engaged in disorderly conduct.

85. No reasonable officer could have believed probable cause existed for Mr. Chambers' arrest or the later issuance of the arrest warrant.

86. The dismissal of Mr. Chambers' charges constitutes a favorable termination on the merits of his criminal case.

## COUNT IV
*False Imprisonment, False Arrest, Malicious Prosecution, and Battery
under OCGA §§ 51-7-1, 51-7-20, 51-7-40, and 51-1-13
by Charity Chambers against Officers Fulton and Bowe*

87. Officers Fulton and Bowe arrested Ms. Chambers without a warrant

and without probable cause to believe she committed a crime.

88. Officers Fulton and Bowe initiated a criminal prosecution against Ms. Chambers.

89. The dismissal of Ms. Chambers' case constituted a favorable termination on the merits.

90. Without any justification to arrest Ms. Chambers, the act of handcuffing and arresting her constituted an assault and battery.

91. Officers Fulton and Bowe acted with actual malice when arresting Ms. Chambers and seeking an arrest warrant and are not entitled to official immunity under Georgia law.

## COUNT V

*False Imprisonment, False Arrest, Malicious Prosecution, and Battery
under OCGA §§ 51-7-1, 51-7-20, 51-7-40, and 51-1-13
by Anthony Chambers against Officers Fulton and Bowe*

92. Officers Fulton and Bowe arrested Mr. Chambers without a warrant and without probable cause to believe he committed a crime.

93. Officers Fulton and Bowe initiated a criminal prosecution against Mr. Chambers.

94. The dismissal of Mr. Chambers' case constituted a favorable

termination on the merits.

95.   Without any justification to arrest Mr. Chambers, the act of handcuffing and arresting him constituted a battery.

96.   Officers Fulton and Bowe acted with actual malice when arresting Mr. Chambers and seeking an arrest warrant and are not entitled to official immunity under Georgia law.

## COUNT VI

*Municipal Liability Resulting from DeKalb County's Policy, Custom, and Practice*
*under 42 U.S.C. § 1983 and the First and Fourth Amendments*
*by Charity and Anthony Chambers against DeKalb County*

97.   DeKalb County, through its Police Department, has routinely and customarily interfered with the expression of constitutionally-protected speech, and has arrested and prosecuted citizens solely for engaging in constitutionally-protected speech.

98.   DeKalb County's disorderly conduct ordinance, passed into law by the County Commission, constitutes an official county policy.

99.   DeKalb County's disorderly conduct ordinance appears at section 16-58 of the DeKalb County Code of Ordinances.

100.   Code section 16-58 states: "(a) It shall be unlawful for any person to act

in a loud and boisterous, reckless, unruly or violent manner for the purpose of insulting, degrading, or inciting another or a group of individuals in a public place. (b) It is not the intent of this section to restrict any individual's right to free speech."

101. Code section 16-58 permits the arrest and prosecution of an individual who acts in a loud and boisterous manner for the purpose of insulting or degrading another individual or group of individuals without any requirement that an individual's conduct also constitute fighting words or an imminent breach of the peace.

102. Officers are not provided with any specific training on the First Amendment, the doctrine of fighting words, or the circumstances under which an individual may be arrested for engaging in constitutionally protected speech.

103. The official County policy codified at code section 16-58 authorizes the arrest of an individual solely for engaging in speech that is protected under the First Amendment and unaccompanied by any action inciting imminent danger or violence.

104. Code section 16-58 is facially unconstitutional.

**105.**   The fact that code section 16-58 is both unconstitutional and routinely

enforced is a moving factor in Plaintiffs' illegal arrests.

**106.**   DeKalb County police officers have a pattern and practice of arresting

individuals solely because they have engaged in constitutionally-

protected speech.

**107.**   Prior instances of arrests being made as a result of engaging in

constitutionally-protected speech include the following examples,

which occurred within five years of the time of Plaintiffs' arrests.

a.   In *Wilkerson v. Seymour*, Plaintiff Monique Wilkerson received a jury

verdict finding that she was falsely arrested by DeKalb County

Police Department officer Thedious Seymour for disorderly conduct

when she was arrested for using profanity.

b.   In *Williams v. Hudson*, Plaintiff's son was arrested for disorderly

conduct for "us[ing] profanity and [being] 'a little loud.'"

c.   In *WBY, Inc. v. DeKalb County*, Plaintiff Joshua Schindler alleged that

he was falsely arrested for and improperly charged with disorderly

conduct by DeKalb County Police Department officers. In defense of

their decision to arrest Schindler for disorderly conduct,

"Defendants claim that Schindler was cursing at officers and acting loudly and boisterously."

d.    On October 14, 2012, while working off duty at a Waffle House, Officer Fulton, Defendant in this civil action, was assisting other officers in effectuating an arrest when he noticed that a bystander was filming the interaction with his phone. Despite the bystander not interfering in any way, Officer Fulton demanded that the bystander stop filing. When the bystander did not stop filming, Officer Fulton approached the bystander, assaulted him, and took his cellphone. Other officers reported that Defendant Fulton was yelling profanities at the bystander and that officer intervention was needed to prevent further escalation. Defendant Fulton did not receive any meaningful punishment or reprimand for this serious constitutional infringement.

108.   Subsequent arrests by DeKalb County Police Department officers show that its custom, policy, and practice of disregarding citizen's First Amendment rights is still pervasive. As but examples:

a.    In *State v. Randon Davis*, Mr. Davis was arrested and prosecuted for

disorderly conduct for showing his middle finger to DeKalb County

Police officers. He was ultimately acquitted.

b.    In *State v. Chelsea Woody*, Ms. Woody was charged with disorderly

conduct for "being disorderly and using profanity after an argument

took place." This incident took place at Bigelow's.

c.    In *State v. Timothy Wilkes*, Mr. Wilkes was charged with disorderly

conduct for "repeated used [sic] profanity towards me and stood in

the front of the location causing a disturbance." This incident also

took place at Bigelow's.

d.    In *State v. Dexter Johnson*, Mr. Johnson was charged with disorderly

conduct for "cursing shout in [sic] loud boisterous manner in

public."

e.    In *State v. Ashlee Cobb*, Ms. Cobb was charged with disorderly

conduct because "[w]hile conducting [a] warrant invest[igation] . . .

Ms. Cobb became irate @ Inv. S. Daniels and other law enforcement

officer."

**109.**   The County has also been placed on notice that its officers do not

understand the application of the First Amendment to the crime of

disorderly conduct. For example, in *Whitley et al. v. Hill, et. al.*, Plaintiff Wynter Whitley made claims that she was falsely arrested for and improperly charged with, *inter alia*, disorderly conduct by DeKalb County Police Department officer Michael Hill. When asked at his deposition what the basis for the disorderly conduct charge was, Hill responded that "Disorderly conduct [was] for her yelling, being loud and boisterous and cursing in a public area at that point where there were still patrons walking around in the parking lot, causing a scene."

110. As a matter of course, the County does not provide training to its police officers, or require training, on the subject of the First Amendment or landmark United States Supreme Court cases applying the First Amendment to disorderly conduct laws.

111. These repeated instances are only a fraction of cases in which DeKalb County officers have violated the First Amendment by arresting individuals engaged in constitutionally-protected speech in the years immediately preceding Plaintiffs' arrests.

112. These incidents provided notice to DeKalb County of the need for policy revisions, increased supervision, and training regarding free

speech activity.

113.  DeKalb County has been deliberately indifferent to the need for

policies, increased supervision, and training regarding free speech

activity.

114.  The County's established custom, failure to train, and county policy

and deliberate indifference to the First Amendment was the proximate

cause of Officer Fulton's and Officer Bowe's decision to arrest both

Plaintiffs.

## COUNT VII

*Declaratory and Injunctive Relief*
*under 42 U.S.C. § 1983 and the First and Fourth Amendment 28 U.S.C. § 2201*
*against DeKalb County*

115.  Code section 16-58 is facially unconstitutional under the First

Amendment.

116.  Although Officers Fulton and Bowe did not charge Ms. Chambers

under Code section 16-58, the county policy codified by section 16-58

was the proximate cause of their decision to arrest Ms. Chambers.

117.  Code section 16-58 served the basis for Officer Fulton's threat to Ms.

Chambers that he would tase her if she continued cursing in public.

-23-

118.   Plaintiffs frequently visit DeKalb County for business and leisure.

119.   Plaintiffs each have used, and intend to use, words which DeKalb

County believes to constitute profanity.

120.   Plaintiffs have made, and intend to make, statements which DeKalb

County considers to be "insulting or degrading," and to act in a manner

which DeKalb County considers "loud and boisterous" under Code

Section 16-58.

121.   Absent a court order enjoining DeKalb County ordinance § 16-58,

Plaintiffs' speech will be chilled and/or Plaintiffs will face imminent

criminal prosecution.

## COUNT VIII

*Attorneys' fees*
*under O.C.G.A. § 13-6-11*
*by Charity and Anthony Chambers against Officers Fulton and Bowe*

122.   Plaintiffs are entitled to recover expenses personally of litigation under

O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, been

stubbornly litigious, and caused Plaintiffs unnecessary trouble and

expense.

123.   O.C.G.A. § 13-6-11 applies to tort actions arising under State law.

WHEREFORE, Plaintiffs request this Court:

a.   Hold a trial by jury on all issues so triable;

b.   Enter the injunctive relief necessary to curb the ongoing policy, custom, and practice of DeKalb County police officers making disorderly conduct arrests which violate the First Amendment;

c.   Award nominal, compensatory, and special damages against Defendants in their individual capacities in an amount to be proven at trial;

d.   Award punitive damages against Defendants Fulton and Bowe in an amount to be determined by a jury;

e.   Award Plaintiffs attorneys' fees under 42 U.S.C. § and 1988 and O.C.G.A. § 13-6-11;

f.   Tax all costs of this action against Defendants; and

g.   Award any additional or alternative legal or equitable relief that is just and appropriate.

This 11th day of July, 2017.

/s/Zack Greenamyre                    /s/Jeffrey R. Filipovits
Zack Greenamyre                      Jeffrey R. Filipovits
Georgia Bar No. 293002               Georgia Bar No. 825553

MITCHELL & SHAPIRO LLP               FILIPOVITS LAW FIRM, PC
3490 Piedmont Road, Suite 650        2900 Chamblee-Tucker Road
Atlanta, Georgia 30305               Building 1
Phone: 404-812-4747                  Atlanta, Georgia 30341
Fax: 404-812-4740                    Phone: 770-455-1350
zack@mitchellshapiro.com             jeff@law.filipovits.com